LeBLANC, Judge.
The issue presented in this adoption proceeding is whether plaintiffs, Mr. and Mrs. GET, sustained their burden of proving it was in the best interest of the child they sought to adopt to permit the adoption.[1] The trial court concluded they did not do so and dismissed their petition for adoption. Plaintiffs now appeal this judgment.
EJG, the child sought to be adopted, was born on March 1, 1985, of the legal union between Richard and Dana G., the child’s natural father and mother, respectively. On February 17, 1987, Richard and Dana consented to the adoption of EJG by plaintiffs, the child’s maternal grandparents. Subsequently, plaintiffs filed a petition for the adoption of EJG and on May 12, 1987, obtained a final decree of adoption. However, on June 2, 1987, Richard filed a petition for nullity of the adoption decree based on the withdrawal of his consent to the adoption, the fact that he was not served with notice of the filing of the petition for adoption and fraud and ill practic *526 es. After a hearing, judgment was ultimately rendered on December 15, 1987, in favor of Richard nullifying the final adoption decree and ordering a hearing on plaintiffs’ petition for adoption. This judgment was not appealed and is now final.
Following a “best interest” hearing, the trial court rendered judgment dismissing plaintiffs’ petition for adoption. Plaintiffs have appealed, alleging that trial court erred in concluding it was not in EJG’s best interest to grant the adoption.
After the lodging of this appeal, Richard filed an exception of no right of action in this court. An exception of no right of action raises the issue of whether the plaintiff belongs to the particular class for which the law grants a remedy for a particular grievance or whether the plaintiff has an interest in judicially enforcing the right asserted. In Re Norton, 471 So.2d 1053 (La.App. 1st Cir.1985); Smith v. Livingston Parish Police Jury, 423 So.2d 5 (La.App. 1st Cir.1982). This exception does not raise the question of the plaintiffs’ ability to prevail on the merits and may not be utilized on the basis that the defendant may have a valid defense to the proceedings. Id.
In this case, Richard asserts that the plaintiffs’ right to apply for the adoption of EJG was dependent upon valid consent to the adoption being given by him. He further alleges that the consent he gave for the adoption was not valid for several reasons it is not necessary to discuss herein. We find, however, that Richard’s argument raises a defense to the adoption, which goes to the merits of these proceedings.[2] The issue raised by this defense has absolutely no bearing upon whether plaintiffs are within the class of individuals permitted by law to petition for adoption. La. R.S. 9:422 provides, in part, that “[a] single person eighteen years or older, or a married couple jointly, may petition to adopt a child.” An examination of the petition clearly reveals that plaintiffs fall within this class of individuals. This exception is not well-founded and is accordingly overruled.
Turning to the merits of the present appeal, we observe that whether adoption is in the best interest of a child must be decided on the particular facts of each case. In Re EWB, 441 So.2d 478 (La.App. 2d Cir.1983). The adoptive parents bear the burden of proving the adoption is in the child’s best interest. In Mr. & Mrs. J.M.P., Applying for Adoption, 528 So.2d 1002 (La.1988)[3], the Supreme Court delineated the following guidelines for determining whether adoption is in a child’s “best interest”.
Among modern legal and child psychological authorities, the consensus is that, of the multifarious considerations relevant to the best interests of a child in resolving a private custody dispute between the natural parent and the proposed adoptive parents, the most important factors are: (1) Whether each person seeking custody is fit to be the child’s parent; (2) Whether either of the adoptive parents has a psychological relationship with the child; and (3) The natural parent’s biological relationship with the child, (at p. 1013)
The trial court’s determination of a child’s best interest is entitled to great weight and will not be disturbed on appeal absent manifest error. In Re Adoption of JSB, 505 So.2d 796 (La.App. 2d Cir.), writ denied, 508 So.2d 819 (1987); In Re Adoption of Broussard, 469 So.2d 454 (La.App. 3d Cir.), writ denied, 474 So.2d 1303 (1985).
*527 In reaching its conclusion in this case that adoption was not in EJG’s best interest the trial court gave the following reasons for judgment:[4]
What is in the best interest of this child is a factual determination.
Mrs. GET, the maternal grandmother, testified that initially she and her husband wanted to adopt this child, their granddaughter, in order to provide financial security and obtain hospitalization insurance benefits through the grandfather’s employer. Shortly after the adoption decree was signed and which was later nullified, Richard and Dana [the natural parents], physically separated and Richard withdrew his consent to the adoption.
After Richard withdrew his consent to the adoption, Mrs. GET states that she became aware of other character flaws in her son-in-law and which consist of, or allude to certain acts of sexuality, involvement with recreational use of drugs, disregard of the child’s personal safety and welfare, and abusive acts toward the child. These deficiencies in her son-in-law were in addition to his inability to stay employed for any length of time and his difficulty in managing his financial affairs.
Richard denied his involvement in the sexuality issue, neglectful or abusive acts, and also testified that he was employed at the time of the hearing on February 9, 1988, and that he was in fact holding down two jobs at the time.
Dana [the natural mother] generally substantiated her mother’s testimony even though she and her husband had reconciled in October, 1987, after a period of their separation and were in fact living in the same home when the best interest hearing was held on February 9, 1988.
Dr. John Pat Galloway, a court appointed psychologist, was of the opinion that the natural parents, Richard and Dana, were not capable parents and that the child needed to be with more stable people. He felt that it was in the best interest of the child to remain with the grandparents at this time; however, Dr. Galloway could not definitively state that it was in the best interest of the child to be adopted by the grandparents. He further substantiated that EJG was spending the days with the grandparents and nights with her mother and father. As to the number of nights that the child was staying with its parents, he received varying periods of time from the maternal grandparents, natural father, and natural mother. He stated that the period of time which the child was spending with its parents and grandparents had no affect [sic] on the conclusions that he reached. He was convinced that the grandparents had the best interest of EJG at heart. Dr. Galloway did acknowledge that there were alternatives available to protect this child’s interest in the event the adoption did not go through and should it be necessary.
1. The initial purpose of the adoption was to provide financial security for the grandchild due to financial difficulty that the parents, Richard and Dana, were experiencing.
2. The home of Richard and Dana is next door to the home of the maternal grandparents, Mr. and Mrs. GET;
3. The maternal grandfather and grandmother are 55 and 53 years of age, respectively; the proposed adoptive child, age 3.
4. Mrs. GET has in fact helped rear this child or provide child care service for a good portion of the life of the child. The child being in the home of its parents overnight. As to the extent of overnight stays, the maternal grandmother stating that the child was only with its parents three nights a week and the natural father stating that the child was with them every night of the week. Suffice it to say that due to the close proximity of the homes of the parties, the parents and maternal grandparents have had considerable access to the child. It is not as *528 though the parties have been physically separated for an extended period of time with no real contact with each other.
6. The natural mother, Dana, does not oppose the adoption, but rather enthusiastically agrees to the adoption of her child by her parents. This situation and the adoption by the maternal grandparents would result in no real change in the association or relationship that is now existing between the mother, the child, and the maternal grandparents. On the other hand, an adoption by the maternal grandparents would terminate the relationship of the natural father and he would be effectively removed from this child’s life.
Based on these facts and findings and taking into consideration that the primary purpose of the adoption at the very outset was to provide financial security and other benefits by the maternal grandparents for their granddaughter, the Court cannot conclude that it is in the best interest of the minor child, EJG, to be adopted by her maternal grandparents. The natural parents of this child certainly have their problems. This is substantiated by Dr. Galloway. There are ample alternatives to protect the best interest of this child should it be necessary. It does not necessarily flow that the adoption of this child would be in its best interest even though the maternal grandparents have the child’s best interest at heart.
It is apparent that Richard is a caring and loving father. Photographs that were introduced into evidence substantiate this. The testimony concerning Richard’s character flaws does not show a persistence or continuous pattern on this part.
Our own review of the record reveals the following with respect to the guidelines established by the Supreme Court in Mr. & Mrs. J.M.P., Applying for Adoption.
FITNESS
Dr. Galloway testified that plaintiffs, EJG’s maternal grandparents, were fit and capable parents. He also indicated it was his belief that EJG’s natural parents were not capable parents at this time, primarily because he concluded that they were each so immature and self-centered that they did not provide EJG with the necessary amount of support and stability. However, Dr. Galloway did not cite in support of his conclusions any specific instances or manner in which the conduct of EJG’s natural parents was detrimental to her, other than to state that they frequently bickered.
It is pertinent to note at this point that Dr. Galloway did not observe EJG interact with either of her parents. Rather, he based his conclusions strictly on his observations of Richard and Dana at separate interviews and upon tests he administered to each of them. Moreover, although Dr. Galloway stated he believed it to be in EJG’s best interest that she remain with her grandparents at this time, he refused to venture an opinion as to whether it was in her best interest to terminate by adoption her relationship with her natural father.
Further, although Mrs. GET and Dana testified that they believed EJG to be in danger of physical and sexual abuse from Richard, they did not substantiate their allegations. There was no evidence to show that EJG had ever been physicaly injured or even in danger of substantial physical injury as a result of her father’s conduct. The claims of sexual abuse center around allegations by Mrs. GET and Dana that Richard taught EJG to be affectionate in an improper manner. Richard denied these allegations. The trial court obviously believed Richard’s denial and we can not say that this credibility determination was an abuse of his discretion or manifestly erroneous.
It does appear that the home environment provided by the natural parents was somewhat lacking in stability, since the evidence reveals that the parties had recently been physically separated, and Dana testified that she had reconciled with Richard only out of fear that he might get sole custody of EJG. She further testified that she intended to leave Richard at some point *529 in the future, regardless of the outcome of these proceedings.
It is unfortunate that EJG’s parents argue and bicker between themselves in her presence. Realistically, however, it must be recognized that such conduct occurs in a large number of homes to a lesser or greater extent and does not normally in and of itself make parents unfit. We do not believe it has adequately been shown that either the frequency or intensity of the arguments between Richard and Dana has or will in the future cause substantial harm to EJG.
In sum, although the evidence reveals that EJG’s natural parents are not ideal parents, we do not believe the record establishes they are totally unfit as parents so as to warrant severing the parent-child relationship on this basis.
PSYCHOLOGICAL RELATIONSHIP
The present case is somewhat unusual in that, according to Dr. Galloway, EJG apparently considers both her natural parents, as well as her maternal grandparents, to some extent, as psychological parents. In the eighteen months prior to the best interest hearing, EJG spent a large amount of time at the plaintiffs’ home, which is next door to the home of Richard and Dana. The testimony of the parties is conflicting as to how much time she spent there.
Richard testified that he had a close relationship with EJG and that they often did things together, such as going to the park, reading and watching television. Dana’s testimony was diametrically opposed to that of Richard. She testified that he did not have a good relationship with EJG and, in fact, spent very little time with her.
In its reasons for judgment, the trial court specifically found that Richard was “a caring and loving father”. We cannot say that this conclusion was an abuse of discretion or manifestly erroneous. It would undoubtably be traumatic for EJG to have her relationship with her father severed. In view of the fact that EJG has a psychological relationship with her natural parents, as well as her grandparents, the existence of this relationship with her grandparents does not mitigate in favor of adoption.
BIOLOGICAL RELATIONSHIP
In Mr. & Mrs. J.M.P., the Supreme Court, at page 29, stated that “the natural parent-child relationship should be disturbed only if necessary to protect the child from physical or psychological harm.” For the reasons given above, we do not find that plaintiffs have sufficiently established that Richard and Dana present a risk of physical or psychological harm to EJG.
While the evidence presented might have been sufficient to show that plaintiffs would have been entitled to custody of EJG at this time, if they had requested such relief, it is not sufficient to show that adoption by plaintiffs is in her best interest. After careful review of the entire record in light of the guidelines delineated by the Supreme Court, we find no abuse of discretion or manifest error in the trial court’s conclusion that adoption by plaintiffs was not in EJG’s best interest.
Appellants are to pay all costs of this appeal.
AFFIRMED.

. In order to maintain the anonymity of the parties, we have substituted initials and, in some cases, first names for the full names of the parties. See La.R.S. 9:437.

. We note that the proper time for Richard to have sought appellate review on the issue of the validity of his consent to the adoption was upon rendition of the trial court judgment nullifying the adoption decree and ordering a best interest hearing. Richard raised the issue of the validity of his consent in the proceedings leading to this judgment. Any issues relating to Richard’s claim that he never validly consented to the adoption, which was implicitly rejected by the trial court, should have been raised by appeal of that judgment. Richard can not now raise this issue upon appeal of the present judgment, which was confined solely to the issue of EJG’s best interest.

. Docket number 88-C-0008; rendered June 3, 1988.

. The same initials and names used in the body of this opinion have been substituted in place of the names used by the trial court in its reasons for judgment.