# STATE OF LOUISIANA

# COURT OF APPEAL, THIRD CIRCUIT

## 14-1160

## STATE IN THE INTEREST OF P.T.

************

## APPEAL FROM THE
## FOURTEENTH JUDICIAL DISTRICT COURT
## PARISH OF CALCASIEU, NO. 24444 "A"
## HONORABLE D. KENT SAVOIE, DISTRICT JUDGE

***********

## JAMES T. GENOVESE
## JUDGE

***********

Court composed of Jimmie C. Peters, Billy Howard Ezell, and James T. Genovese, Judges.

Ezell, J., dissents and assigns written reasons.

**AFFIRMED IN PART;
REVERSED IN PART;
AND RENDERED.**

**Frank Granger**
**A Professional Law Corporation**
**1135 Lakeshore Drive, 6th Floor**
**Lake Charles, Louisiana 70601**
**(337) 439-2732**
**COUNSEL FOR INTERVENORS/APPELLANTS:**
        **R.T. and G.T.**

**Jonathan L. Johnson**
**Johnson & Vercher, L.L.C.**
**910 Ford Street**
**Post Office Box 849**
**Lake Charles, Louisiana 70601**
**(337) 433-1414**
**COUNSEL FOR INTERVENOR/APPELLEE:**
**S.R.**

**Amy E. McGray**
**MHAS/ Child Advocacy Program**
**1 Lakeshore Drive, Suite 1585**
**Lake Charles, Louisiana 70601**
**(337) 491-2461**
**COUNSEL FOR THE MINOR CHILD:**
**P.T.**

**Stephen A. Berniard, Jr.**
**Raggio, Cappel, Chozen & Berniard**
**Post Office Box 820**
**Lake Charles, Louisiana 70601**
**COUNSEL FOR APPELLEE/STATE OF LOUISIANA**

**GENOVESE, Judge.**

In this juvenile proceeding, the maternal grandparents, R.T.[1] and G.T., appeal the trial court's judgment: (1) denying their petition for adoption of the minor child, P.T.; (2) awarding joint custody of P.T. to R.T. and G.T. along with the paternal grandmother, S.R.; (3) granting co-domiciliary status to the parties; and, (4) terminating the jurisdiction of the Department of Children and Family Services (DCFS). For the reasons that follow, we affirm in part, reverse in part, and render.

## FACTS AND PROCEDURAL HISTORY

P.T., the child of J.S. and S.T, was born May 27, 2009. On October 16, 2011, the DCFS filed a petition to have P.T. adjudicated a child in need of care. Thereafter, the trial court issued an instanter order placing P.T. into the custody of the DCFS. Following a continued custody hearing, P.T. was placed in the temporary custody of the DCFS. On November 17, 2011, the trial court found P.T. to be a child in need of care. The trial court held a dispositional hearing on December 8, 2011, and maintained custody of P.T. with the DCFS.

S.R. filed a Petition for Intervention on December 12, 2011, seeking custody of P.T. or, alternatively, visitation. On January 11, 2012, R.T. and G.T. filed a Petition for Intervention and Custody whereby they also sought the sole care, custody and control of P.T. Following a hearing on February 29, 2012, P.T. was placed with R.T. and G.T., and S.R. was given specified visitation.

Several case review hearings occurred thereafter. In 2012, the trial court approved the DCFS's recommendation that the case plan goal be changed from

---

[1]Pursuant to Uniform Rules—Courts of Appeal, Rules 5–1 and 5–2, the initials of the parties will be used to protect and maintain the privacy of the minor child involved in this proceeding.

that of reunification to adoption. On March 28, 2013, the trial court considered a Petition for Certification and Termination of Parental Rights. Subsequent thereto, the trial court terminated the parental rights of J.S and S.T., and P.T. was freed for adoption.

The trial court held a case review hearing on May 28, 2013, at which time it found that adoption would not be in P.T.'s best interest. The trial court reached this conclusion based upon the equal sharing of custody of P.T. between R.T. and G.T. and S.R. at that time.

On November 12, 2013, the trial court considered the matter of the adoption of P.T., S.R.'s Petition for Custody,[2] and the answer and reconventional demand of R.T. and G.T., wherein they also sought custody of P.T. in the event the trial court denied their Petition for Adoption. Following a hearing on these matters, the trial court denied R.T. and G.T.'s Petition for Adoption, awarded R.T. and G.T. joint custody of P.T. along with S.R., and it granted co-domiciliary status to the parties. Additionally, the trial court terminated the jurisdiction of the DCFS. On June 19, 2014, the trial court signed a judgment in accordance therewith, which included a Joint Custody Plan. R.T. and G.T. appeal.

## ASSIGNMENTS OF ERROR

R.T. and G.T. present the following for our review:

1.  The trial court erred in denying the Petition for Adoption of P.T. by Appellants, R.T. and G.T.[]

2.  The trial court erred in not applying the presumption in favor of adoption by R.T. and G.T. in the proceeding and ruling that

---

[2]S.R.'s appellate brief states that S.R. also filed a Petition for Adoption, a copy of which is attached as an exhibit thereto; however, she notes that this pleading "does not appear in the record but is discussed in the transcript[.]" We agree with S.R. that although the record is void of this pleading, it is apparent that her petition was considered. However, given that S.R. has not appealed nor answered the appeal, the propriety of any action, *vel non*, by the trial court relative to her petition is not before this court.

they failed to meet their burden of proof that the adoption of P.T. was in her best interest[.]

3.  Appellee, S.R., failed to prove the adoption is not in the best interest of P.T. Further, she had no legal standing to adopt but could only challenge the adoption as not in P.T.'s best interest[.]

4.  The trial court erred in awarding joint custody of P.T. to R.T. and G.T and S.R.[]

5.  The trial court erred in making R.T. and G.T. and S.R. co-domiciliary parents of P.T. []

6.  The trial court erred in terminating the jurisdiction of DCFS when it denied the adoption in violation of [La.Ch.Code arts.] 1037 and 1042.

## LAW AND DISCUSSION

We note at the outset that the parties dispute the proper standard of review to be applied by this court on appeal. R.T. and G.T. contend that due to legal errors of the trial court, it is incumbent upon this court to conduct a de novo review of the record. We disagree.

As stated, R.T. and G.T.'s second assignment of error raises an issue that they contend constitutes a legal error by the trial court in failing to apply a rebuttable presumption that adoption is in the best interest of the child.[3] They conclude that the presumption "shifts the burden on the natural parent, or in this case, the intervening maternal grandmother, S.R., to prove that the adoption is *not* in the child's best interest." We find no merit to this contention.

This is not an intra-family adoption governed by La.Ch.Code art. 1255. Because this case involves an agency adoption, the authority relied upon by R.T. and G.T. is inapplicable. The presumption contained in La.Ch.Code art. 1255 did not apply in this agency adoption case. Therefore, the trial court did not legally err

_____

[3]Louisiana Children's Code Article 1255(C) provides that "[w]hen a court has granted custody to either the child's grandparents or his parent married to the stepparent petitioner, there shall be a rebuttable presumption that this adoption is in the best interests of the child."

3

in failing to apply a presumption in favor of adoption by R.T. and G.T.

The trial court's denial of R.T. and G.T.'s Petition for Adoption was made upon his finding that the adoption "would be detrimental to [P.T.'s] best interest." Such a determination is fact intensive; thus, the trial court's findings are entitled to great weight and will not be disturbed on appeal unless it is manifestly erroneous or clearly wrong. *In re M.J.C.*, 09-1355 (La.App. 3 Cir. 3/10/10), 33 So.3d 397. After applying the pertinent law, the trial court made the factual determination that the burden of proof was not met in this case; thus, the adoption was denied. This determination will not be disturbed absent a finding of manifest error by this court.

R.T. and G.T.'s first three assignments of error are intertwined in that they all address the merits of the trial court's denial of the Petition for Adoption. For our purposes, we shall address these purported errors of the trial court in combination and not in the order in which they were presented.

R.T. and G.T. raise issues of the burden of proof. They argue both that the trial court erroneously found "that R.T. and G.T. did not meet their burden of proof that the adoption was in the best interest of P.T.[,]" and, that "S.R. failed to prove the adoption is not in the best interest of P.T." We find no merit to these contentions.

In its oral reasons for judgment, the trial court first cited La.Ch.Code art. 1217(B), which provides that "[t]he court, after hearing and after taking into consideration information from all sources concerning the adoption, may enter a final decree of agency adoption, or it may deny the adoption. The basic consideration shall be the best interests of the child." The trial court went on to note that the criteria for determining the best interests of the child in the case of a petition for adoption has never been articulated by the legislature "except for broad considerations expressed in [La.Ch.Code art.] 1208." Specifically addressing the

4

burden of proof, and referencing *In re J.M.P.*, 528 So.2d 1002 (La.1988),[4] the trial

court noted that "it put the burden of proof on the person proposing to get the

adoption to convince the court that it was, in fact, [in] the best interest of the

child."

In *In re JMP*, 528 So.2d at 1012, our supreme court stated as follows:

> The statute does not allocate the burdens of proof with respect
> to the best interest of the child. But in our opinion both the burden of
> producing evidence and the burden of persuasion should be on the
> adoptive parents. The facts with regard to the crucial issue of the
> nature of the child's relationship with the adoptive parents lie
> peculiarly within their knowledge. Additionally, they are more apt to
> be able to produce expert witness testimony helpful to the court in
> deciding what is in the child's physical and emotional best interests.
> *See* McCormick, On Evidence, § 337, at 950 (3rd ed. 1984).

Thus, in the instant case, R.T. and G.T. bore the burden of proving that their

adoption of P.T. would be in the best interest of the child. Therefore, assignment

of error number three is without merit. Having so concluded, we must next

consider whether they, in fact, met that burden based on the record in this case and

guided by the instruction of our supreme court.

> The exact scope of the standard "best interest of the child"
> under the private adoption statute has not been detailed by the
> Legislature or this court. But the policy reflected in these words is
> firmly established in other statutes and in the law of virtually every
> American jurisdiction. The basic concept underlying this standard is
> nothing less than the dignity of the child as an individual human
> being. For this reason the words of the criterion cannot be precise and
> their scope cannot be static. "The best interests of the child" must
> draw its meaning from the evolving body of knowledge concerning
> child health, psychology and welfare that marks the progress of a
> maturing society.

> Among modern legal and child psychological authorities, the
> consensus is that, of the multifarious considerations relevant to the
> best interests of a child in resolving a private custody dispute between

---

[4]*In re J.M.P.* involved a private adoption and the applicable statute; however, as this
court noted, "the best interest of the child standard is paramount in all adoptions[.]" *In re
Billeaud*, 600 So.2d 863, 866 (La.App. 3 Cir. 1992); *see also*, *In re G.E.T.*, 529 So.2d 524
(La.App. 1 Cir. 1988).

the natural parent and the proposed adoptive parents, the most important factors are: (1) Whether each person seeking custody is fit to be the child's parent; (2) Whether either of the adoptive parents has a psychological relationship with the child; and (3) The natural parent's biological relationship with the child.

*In re J.M.P.*, 528 So.2d at 1012-13 (footnotes omitted).

In accordance with *In re J.M.P.*, when considering the paramount consideration of P.T.'s best interest, the trial court considered the factors set forth by our supreme court. The trial court first referenced the testimony of P.T.'s school principal, who "very clearly said that she could see no difference when the child is with one set of grandparents versus the other set of grandparents." Similarly, the trial court mentioned the CASA worker's testimony that she could see no reason why S.R. "would not be a suitable parent as well." There being no issue of the fitness of the parties, the trial court found both "sets of grandparents, [to be] fully capable of rearing a four year old child." This determination by the trial court is wholly supported by the record.

Additionally, the trial court expressly considered the parties' relationships with P.T. Beginning in February 2012, R.T. and G.T., along with S.R., began jointly sharing responsibly for P.T. Although P.T. was placed with R.T. and G.T., S.R. was given visitation on alternating weeks such that the parties were sharing custody of P.T. on an equal basis. The evidence substantiates that the parties each enjoyed a close and loving relationship with the child. In the words of the trial court, "the child has established a relationship with both the paternal grandmother and the maternal grandparents, such that putting one party in control of that relationship, either way, . . . would be detrimental to her best interest." Unquestionably, with respect to the psychological relationships involved, R.T., G.T., and S.R., all had a close and loving relationship with P.T., which the trial court deemed essential and needed to be maintained.

Lastly, we note that although *In re J.M.P.* lists the relationship of the biological parents as a factor, it is not relevant in this case since their parental rights were terminated in 2013, and the present case solely involves the competing interests of P.T.'s paternal grandmother and maternal grandparents.

In brief, R.T. and G.T. devote considerable discussion to the concern voiced by the trial court that in the event of an adoption, R.T. and G.T. may deny S.R. contact and visitation with P.T. They contend that that the trial court denied their petition for adoption based upon a "fear that if adoption were granted, somehow, S.R. would be 'cut out' or not have any say in the decision-making authority for the child[.]"

We agree with S.R. that the trial court's oral reasons for judgment reveal its concern of ensuring that all of the parties have continued contact with P.T. The trial court was fully cognizant that "an adoption establishes a parent/child relationship with the adoptive parents, and terminates the familial relationship with other relatives." As such, the trial court noted the reality that an adoption would be permanent in nature and that "future circumstances may change[.]" Further, the trial court stated that it did "not think that it's in the best interest of the child that at this young age that [it] make a determination that's forever going to affect how she is raised." However, these considerations were not determinative; rather, they were considerations of the trial court in determining what was in the best interest of P.T. We agree with S.R. that the trial "court's denial of the adoption[] in this case was well-founded on the evidence presented and well-reasoned based upon

the correct application of the law, burden of proof, and basic consideration of the best interest of P.T."[5]

The key distinction between an adoption and custody is that an adoption is permanent; whereas, custody is always subject to change. It is in P.T.'s best interest, considering her tender age, that there be a flexible arrangement between the parties which is readily adaptable to the changing needs of both P.T. and her respective grandparents. A custodial arrangement, as opposed to the permanence of an adoption, is best suited to adjust to P.T.'s needs up through majority. An adoption cannot be altered, but custody can always be modified to provide for P.T.'s best interest.

After a thorough review of the record, it is clear that the evidence supports the trial court's judgment denying the adoption and that the trial court was neither manifestly erroneous nor clearly wrong. For these reasons, we affirm the trial court's denial of R.T. and G.T.'s Petition for Adoption.

R.T. and G.T. also contend that the trial court erred in awarding joint custody of P.T. to R.T. and G.T. and S.R. We disagree.

> [T]he unique facts of this case do not fit cleanly into the parameters of La. Civ.Code art. 133. Nonetheless, it is well-established that each child custody case must be viewed in light of its own particular set of facts and circumstances, with the paramount goal of reaching a decision that is in the best interest of the child. *Barberousse v. Barberousse*, 556 So.2d 930 (La.App. 3 Cir.1990). The trial court has great discretion in this area, and its determination will not be disturbed in the absence of a clear abuse of discretion. *Bagents v. Bagents*, 419 So.2d 460 (La.1982). The primary consideration and prevailing inquiry is whether the custody arrangement is in the best interest of the child. *See Evans v. Lungrin*, 97-0541, 97-0577 (La.2/6/98), 708 So.2d 731.

---

[5]We note that the attorney for the minor child filed a brief with this court wherein she adopts the law and argument presented by S.R. and requests that the ruling of the trial court be affirmed.

*McCormic v. Rider*, 09-2584, pp. 3-4 (La. 2/12/10), 27 So.3d 277, 279. Since the best interest of P.T. is the paramount consideration for purposes of both adoption and custody, the same considerations discussed above apply to the issue of custody. Moreover, the applicable law must be applied against the backdrop of the unique set of facts of this case.

From the time that she was placed in the custody of the DCFS, the maternal grandparents and the paternal grandmother have all played vital roles in the upbringing of P.T. from a very young age. As the trial court noted, P.T. was fortunate to have her grandparents fill the void once her parents' rights were terminated. Although P.T. was placed in the home of R.T. and G.T., S.R. had visitation with P.T. on alternating weeks. This arrangement continued for two years without incident. Clearly, P.T. has established a close and loving relationship with both parties, and the arrangement has been to her benefit. Both of the parties are also fit to care for the child and are capable of rearing the child. Given the strength of these relationships, the record is clear that the trial court was intent on ensuring that P.T. continues to maintain contact with both her paternal grandmother and her maternal grandparents.

On the question of custody, we agree with S.R.[6] that "the court's ruling did precisely what [La.Ch.Code art. 702[7]] suggests and was based on the exact criteria

---

[6]Again, we note that the minor child has adopted the law and arguments of S.R. relative to the trial court's ruling.

[7]Louisiana Children's Code Article 702 provides, in pertinent part:

> C. The court shall determine the permanent plan for the child that is most appropriate and in the best interest of the child in accordance with the following priorities of placement:

> (1) Return the child to the legal custody of the parents within a specified time period consistent with the child's age and need for a safe and permanent home. In order for reunification to remain as the permanent plan for the child, the parent must be complying with the case plan and making significant measurable

that this article demands." Once the trial court concluded that adoption was not in P.T.'s best interest, in keeping with La.Ch.Code art. 702(C)(4), which lists "a relative who is willing and able to offer a safe, wholesome, and stable home for the child[,]" the trial court concluded that both of the parties were capable of doing so. Moreover, the resolution reached by the trial court is wholly in keeping with article 702(D)'s mandate that consideration be given to P.T.'s "need for continuing contact with any relative . . . with whom the child has an established and significant relationship[.]" For these reasons, we find no error in the trial's court determination that joint custody was in the best interest of P.T., and, accordingly, we affirm same.

R.T. and G.T. also assert that the trial court erred in designating co-domiciliary status to them and S.R. We agree.

Louisiana Revised Statutes 9:335(B) provides:

> (1) In a decree of joint custody the court shall designate a domiciliary parent except when there is an implementation order to the contrary or for other good cause shown.

---

progress toward achieving its goals and correcting the conditions requiring the child to be in care.

(2) Adoption.

(3) Placement with a legal guardian.

(4) Placement in the legal custody of a relative who is willing and able to offer a safe, wholesome, and stable home for the child.

(5) Placement in the least restrictive, most family-like alternative permanent living arrangement. The department shall document in the child's case plan and its report to the court the compelling reason for recommending this plan over the preceding higher priority alternatives.

D. The court shall consider a child's need for continuing contact with any relative by blood, adoption, or affinity with whom the child has an established and significant relationship in accordance with Article 1269.2 as one of several factors in determining the permanent plan that is most appropriate and in the best interest of the child.

(2) The domiciliary parent is the parent with whom the child shall primarily reside, but the other parent shall have physical custody during time periods that assure that the child has frequent and continuing contact with both parents.

(3) The domiciliary parent shall have authority to make all decisions affecting the child unless an implementation order provides otherwise. All major decisions made by the domiciliary parent concerning the child shall be subject to review by the court upon motion of the other parent. It shall be presumed that all major decisions made by the domiciliary parent are in the best interest of the child.

In this case, the trial judge, when specifically questioned on the issue of domiciliary status, replied that his decision was "co-domiciliary parents. I'm not putting one in charge of the other." The record reflects that there was then a discourse on the legal propriety of such a designation with counsel urging that the law requires that a domiciliary parent be named, to which the trial court responded: "I'll name both of them." While this reasoning of the trial court is in keeping with the general tenor of its decision being concerned with not elevating the authority of one party over the other, we agree with R.T. and G.T. that co-domiciliary status is inappropriate and not in the best interest of the child, considering the facts in this case.

By its express terms, La.R.S. 9:335(B)(1), grants a trial court the authority, upon a finding of "good cause," to decline to name a domiciliary parent. R.T. and G.T. do not dispute that co-domiciliary status may never be granted; rather, they "do not believe that such circumstances exist in this case." We agree.

The trial court, in its oral reasons for judgment, stressed its desire and belief that the parties should both be apprised of and consulted in decisions being made relative to P.T. In principle, we agree. However, in practice, and in actuality, we agree with R.T. and G.T. that co-domiciliary status may easily result in "a disagreement by one [that] will effectively prevent decisions being made on behalf

11

of P.T." The result of such an occurrence could easily establish conflicting co-authorities and an untenable domiciliary status which will not serve the best interests of P.T. Additionally, the slightest disagreement between the respective co-domiciliary grandparents has the potential of spawning litigation over the routine rearing of the child.

Considering the totality of the circumstances, especially considering the fact that the joint custody plan calls for P.T. to reside with R.T. and G.T. during the school year, we find that the trial court erred in its designation of co-domiciliary status to the parties. We find the placement of P.T. in the home of R.T. and G.T., her maternal grandparents, since 2012, to be significant in this regard. We note that the maternal grandparents, a married couple, have been active in providing for and rearing P.T. since the inception of these proceedings. Additionally, while not minimizing the contributions and care provided by S.R., we find that designating R.T. and G.T. to be the domiciliary grandparents of P.T. to be in her best interest. For these reasons, we reverse the trial court's grant of co-domiciliary status to the parties, and we render judgment herein designating R.T. and G.T. as the domiciliary grandparents of P.T.

In their final assignment of error, R.T. and G.T. contend that the trial court erroneously terminated the jurisdiction of the DCFS. We disagree.

P.T. came into the custody of the DCFS after being found to be a child in need of care. That is no longer the case. Currently, P.T. is in the joint custody of her paternal grandmother and maternal grandparents and is no longer in need of care. The State's position is that there are no continuing concerns, and it has requested to be released. Considering the facts and the status of this case, there is nothing to justify or warrant maintaining the DCFS in this case. Accordingly, we

find no error with the trial court's decision to release the DCFS from these proceedings, and we affirm that portion of the judgment regarding same.

## DECREE

For the reasons assigned, we affirm the trial court's judgment denying R.T. and G.T.'s Petition for Adoption, awarding joint custody to R.T. and G.T. along with S.R., and terminating the jurisdiction of the Department of Children and Family Services. Additionally, we reverse that portion of the trial court's judgment and the Joint Custody Plan granting co-domiciliary status to both parties, and we render judgment herein designating R.T. and G.T. as the domiciliary grandparents of P.T. Costs of this appeal are assessed fifty percent to R.T. and G.T., and fifty percent to S.R.

**AFFIRMED IN PART;**
**REVERSED IN PART;**
**AND RENDERED.**

**STATE IN THE INTEREST OF P.T.**

**EZELL, Judge, dissenting.**

For the following reasons, I respectfully dissent. This matter began as a child in need of care case by petition filed by the State on October 6, 2011. On October 27, the trial court placed the child in the temporary custody of the Department of Child and Family Services (DCFS). On December 12, 2011, the paternal grandparent, S.R., filed for custody of P.T. On January 11, 2012, the maternal grandparents R.T. and G.T. filed to intervene and for custody of P.T., therein asking for sole care, custody, and control of P.T.

At a dispositional hearing on February 29, 2012, P.T. was placed with R.T. and G.T., with S.R. being given alternating Tuesdays from 9:00 a.m. to Sunday at 5:00 p.m. All efforts toward reunification with the parents of P.T. failed!

At the case review hearing on February 19, 2013, the goal set by the State was <u>that adoption</u> was in the best interest of the child. On March 28, 2013, the parental rights of the parents of P.T. were terminated. The trial court, on May 28, 2013, determined that it was not in the best interest of the child to be adopted and rendered judgment that the paternal and maternal grandparents would share the custody of P.T. All the grandparents were joined or placed at issue the custody and/or adoption of P.T. in pleadings before the trial court.

On August 22, 2013, in a court report by the CASA representative for the court, it was recommended that P.T. be adopted by R.T. and G.T., due to the fact that both parties were in agreement that the paternal grandparent, S.R., would have visitation every other weekend. However, when the parties came before the trial

court, they had not reached an agreement. Even though there was no agreement, the CASA worker again recommended adoption by R.T. and G.T. This occurred on November 5, 2013. On November 12, 2013, a bench trial was held and the court denied the adoption and granted co-domiciliary custody to R.T. and G.T., maternal grandparents, and to S.R., paternal grandparent.

All of the agency reports and CASA reports indicate that the maternal grandparents, R.T. and G.T., have provided the child with all of her needs and the child is comfortable in their home. P.T. was originally place with the maternal grandparents on March 1, 2012. The CASA report of September 2013 clearly shows that the grandparents, before lawyers became involved in the court proceedings as representatives of both of the grandparents, were agreeable to having the child adopted by the maternal grandparents, as long as S.R. got the child every other weekend and shared holidays with the maternal grandparents.

On September 5, 2013, the trial court ordered that counsel for the parties make a proposal to the maternal grandparents as to custody of P.T. The CASA designee, Marie Jones, on November 5, 2013, filed her report and again recommended adoption by R.T. and G.T.

The trial court, on November 12, 2013, after a trial, denied the adoption and awarded joint custody of P.T. and granted co-domiciliary custody of the child, P.T. to both sides and terminated the jurisdiction of DCFS and incorporated a joint custody plan on June 19, 2014. This judgment was read and signed on August 18, 2014. It is clear from the comments made by the trial court that the court was under the mistaken impression that if the parties could and would agree to a visitation agreement under a "Continuing Contact Agreement," which is permissible as per La.Ch. Code art. 1218(D), and more specifically under La.Ch.

2

Code art. 1269.1, that the trial court would not be able to alter the judgment of adoption in the future.

We must remember that one of the purposes for termination of the parents' rights is to make the child available for adoption. The trial court, by not allowing for adoption, in reality makes the child an orphan or a child without a parent or parents. La.Ch. Code art. 1037.1. It is clear that the preference is given to adoption in these cases. La.Ch. Code art. 702(C). The reasoning by the trial court was, "If I do custody agreement and I find that one party is not cooperating then I can change the custody agreement, . . . . and give more authority to one party than the other. . . . versus an adoption, I'm stuck." This I feel is legal error! The decision in this case by the trial court will not resolve the differences between the parties, but engender and require litigation in the future to resolve differences. In a Continuing Contact Agreement, the court can require mediation between the parties to resolve any differences. See La.Ch. Code art. 1269.8(B).

It is clear that S.R. did not present sufficient evidence to controvert the presumption that adoption of P.T. was in her best interest. *In re C.B., Applying for Adoption*, 94-755 (La. 10/17/94), 643 So.2d 1251. The only evidence presented by S.R. was with regard to her visitation/access. S.R. was concerned as to what was in her best interest and presented that evidence at trial.

It is clear that pursuant to La.R.S. 9:335(B)(1), unless "an implementation order to the contrary or for other good cause shown," there shall be a designated domiciliary parent," not co-domiciliary parents.

If the trial court denied the adoption in this matter, the State's involvement is not terminated. I find that termination of the involvement of the DCFS is a legal error.

Every child needs stability, and in this case, that stability would call for the adoption of the child, P.T., by her maternal grandparents and a "Continuing Contacts Agreement" with the paternal grandparent.